UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
ESTHER SALAS
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING
COURTHOUSE
50 WALNUT ST.
ROOM 5076
NEWARK, NJ 07102
973-297-4887

May 27, 2025

**LETTER MEMORANDUM**

Re:   *United States of America v. Alcibiades Cifuentes*,
      Criminal Action No. 17-0187 (ES)

Dear Parties:

Before the Court is defendant Alcibiades Cifuentes's[1] motion for a sentence reduction pursuant to Amendment 821 of the Sentencing Guidelines (hereinafter "Amendment 821") and 18 U.S.C. § 3582(c). (D.E. No. 158 ("Motion" or "Mov Br.") at 1). On September 20, 2024, the Government opposed (D.E. No. 161 ("Opp. Br.")), and on September 26, 2024, Defendant replied, (D.E. No. 162 ("Reply Br.")). The Probation Office has informed the Court that Mr. Cifuentes appears to eligible for a sentence reduction as a result of Amendment 821. (D.E. No. 163 at 1). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009); *see also* L. Civ. R. 78.1(b); L. Crim. R. 1.1. For the following reasons, Mr. Cifuentes's Motion is **DENIED**.

**I.    BACKGROUND**

On May 18, 2017, a federal grand jury sitting in Newark issued an indictment against Mr. Cifuentes and his wife, Mrs. Cifuentes, charging them with six total counts, including one count of conspiracy to commit wire fraud (Count I), four counts of wire fraud (Counts II–V), and one count of embezzlement, theft, purloining, and intentional conversion by a commodity pool operator (Count VI). (D.E. No. 53 ("Indictment")). The Court scheduled trial multiple times, including on April 16, 2018 (D.E. No. 64) and November 12, 2019 (D.E. No. 95). On November 7, 2019, Mr. Cifuentes pled guilty to the charges in the Indictment. (D.E. No. 106).[2]

By way of brief background, as described in the Presentence Report (D.E. No. 163-2 ("PSR")) and during sentencing, Defendants operated a company called Cifuentes Fund Management, Inc. ("CFM"), which purported to be a hedge fund that invested in forex, commodities, and related instruments. (PSR ¶ 7). Defendants, on behalf of CFM, solicited and

---

[1]   For purposes of the instant motion, the Court refers to defendant Alcibiades Cifuentes as "Mr. Cifuentes." In addition, because Jennifer Wee Cifuentes—Mr. Cifuentes's wife and a co-defendant in this matter ("Mrs. Cifuentes")—also partook in the offense conduct, the Court refers to both defendants collectively as "Defendants" where applicable. The instant motion pertains only to Mr. Cifuentes.

[2]   On November 18, 2019, Mrs. Cifuentes pled guilty to the charges in the Indictment. (D.E. No. 113).

accepted funds from clients—including their close friends and co-workers—for the purpose of trading in foreign currency commodity interests. (*See id.*; *see also* D.E. No. 157 ("Sent. Tr.") at 131:15–24 & 157:10–12). Defendants represented that they had a history of successful forex trading, maintained a website that reflected trading returns, and stated that investors were guaranteed inflated return rates (as high as 120% annually). (PSR ¶ 8). Meanwhile, Defendants used victim investors' money to purchase luxury cars, clothes, and other personal items. (*Id.* ¶ 9). They also diverted some of their victim investors' deposits to other victim investors as purported "dividends" to maintain the Ponzi scheme. (*Id.*). Over the course of three years, Defendants defrauded at least thirty victims by causing them to invest over $550,000 with CFM. (*Id.* ¶¶ 43 & 60).

On December 15, 2021, after multiple adjournments, both Defendants were sentenced to seventy-one months of imprisonment on Counts I–VI, to run concurrently, and three years of supervised release. (D.E. Nos. 145 & 146; D.E. No. 147 (Mr. Cifuentes's Judgment); D.E. No. 148 (Mrs. Cifuentes's Judgment)).[3] The Court ordered Defendants to pay $437,914.08 in restitution. (D.E. Nos. 147 & 148). During sentencing, the Court denied the Government's request to apply the vulnerable victim enhancement for two specific victims—S.D. and T.E.—because, among other reasons, Defendants had communicated with third party intermediaries on the victims' behalf. (Sent. Tr. at 106:13–110:11).

## II. LEGAL STANDARD

As provided by 18 U.S.C. § 3582(c)(2) a federal district court may reduce an otherwise final sentence pursuant to an amendment to the United States Sentencing Guidelines ("U.S.S.G") "if a reduction is consistent with the [Sentencing] Commission's policy statements." *Dillon v. U.S.*, 560 U.S. 817, 821 (2010). Amendment 821 to the Guidelines became effective on November 1, 2023, and applies retroactively. U.S.S.G § 1B1.10(a)(1), (d). "Part B of Amendment 821 created a new provision, Section 4C1.1, which provides a two-level downward adjustment in offense level for offenders who present zero criminal history points, unless the defendant falls within one of the listed exceptions to relief." *United States v. Weiss*, No. 20-0163, 2024 WL 3623510, at *1 (E.D. Pa. Aug. 1, 2024) (citing U.S.S.G. § 4C1.1).

Under the enumerated exceptions, a defendant is ineligible for a sentence reduction if: (1) he received criminal history points under U.S.S.G. § 4.A; (2) he received a terrorism adjustment under U.S.S.G. § 3A1.4; (3) he used violence or credible threats of violence in connection with the offense; (4) the offense resulted in death or serious bodily injury; (5) the offense was a sex offense; (6) **_he personally caused substantial financial hardship_**; (7) he possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon in connection with the offense; (8) the offense was an offense involving individual rights covered by U.S.S.G. § 2H1.1; (9) he received a hate-crime-motivation or vulnerable-victim adjustment under U.S.S.G. § 3A1.1; or an adjustment for a serious human rights offense under U.S.S.G. § 3A1.5; (10) he received an aggravating-role adjustment under U.S.S.G. § 3B1.1; or

---

[3] In light of Defendants' family circumstances, Mrs. Cifuentes will surrender to an institution designated by the Bureau of Prisons after Mr. Cifuentes completes his term of imprisonment. (D.E. No. 148 at 2).

(11) he was engaged in a continuing criminal enterprise as defined in 21 U.S.C. § 848. *See* U.S.S.G. § 4C1.1(a)(1)–(11).

Pertinent here is the exception described in U.S.S.G. § 4C1.1(a)(6), which provides that the defendant "did not personally cause substantial financial hardship." U.S.S.G. § 4C1.1(a)(6). "In determining whether the defendant's acts or omissions resulted in 'substantial financial hardship' to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to § 2B1.1 (Theft, Property Destruction and Fraud)." U.S.S.G. § 4C1.1(b)(3). These factors include whether the offense resulted in the victim(s):

> (i)   becoming insolvent;
>
> (ii)  filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
>
> (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
>
> (iv)  making substantial changes to his or her employment such as postponing his or her retirement plans;
>
> (v)   making substantial changes to his or her living arrangements, such as a relocating to a less expensive home; and
>
> (vi)  suffering substantial harm to his or her ability to obtain credit.

U.S.S.G. § 2B1.1, n.4(F). Indeed, "[s]ubstantial financial hardship might also be present where the number of victims is high, the amount lost is high, or the victims are particularly vulnerable." *Weiss*, 2024 WL 3623510, at *2 (first citing *United States v. Ortiz*, No. 19-0161, 2023 WL 1929690, at *5 (E.D.N.Y. Feb. 10, 2023) (finding that the defendant caused significant financial hardship because he misappropriated $224,500); and then citing *United States v. Bronfman*, No. 18-0204, 2024 WL 1740484, at *1 (E.D.N.Y. Apr. 23, 2024) (finding that financial difficulties or exploiting immigration status may constitute causing substantial financial hardship)).

If a defendant is otherwise eligible for a sentence reduction, the court must also consider any applicable factors under 18 U.S.C. § 3553(a) ("Section 3553(a)") and determine, in its discretion, whether a reduction is warranted "in whole or in part under the particular circumstances of the case.'" *Dillon*, 560 U.S. at 826–27.[4]

---

[4] The factors the Court considers under 18 U.S.C. § 3553(a) are: (i) the nature and circumstances of the offense and the defendant's history and characteristics; (ii) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences and sentencing

### III.    ANALYSIS

Mr. Cifuentes argues that he is entitled to the zero-point offender reduction because he did not personally cause substantial financial hardship to any victims. (Mov. Br. 5). In support of his position, Mr. Cifuentes states that the Probation Office considered a potential enhancement for causing victims substantial financial hardship pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(iii),[5] but could not assess its application because the victims did not respond to the Office's letters. (*Id.* (citing PSR ¶ 54)). Because the Court did not apply the substantial financial hardship enhancement during sentencing, Mr. Cifuentes argues that the law of the case doctrine bars a finding that would preclude his eligibility for Amendment 821 relief. (*Id.*). In addition, Mr. Cifuentes argues that the goals of sentencing, public safety, and his post-sentencing conduct all support a sentence reduction. (*Id.* at 6–10).

In opposition, the Government notes that "[l]eading up to and during sentencing, several victims described how the Defendants' fraud caused them substantial financial hardship." (Opp. Br. at 4–5 (quoting statements and letters from victims N.M., R.V., and S.R.)). In addition, the Government argues that because the Court easily found that the offense involved ten or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), it applied the two-level enhancement without needing to explicitly find substantial financial hardship to one or more victims under U.S.S.G. § 2B1.1(b)(2)(A)(iii). (*Id.* at 6 (citing representations by Mrs. Cifuentes's counsel during sentencing who confirmed that U.S.S.G. § 2B1.1(b)(2)(A) cannot be counted twice for both ten or more victims *and* substantial financial hardship because it is an "either/or section of the guidelines" thus, "you can't have both"); *see* Sent. Tr. at 54:15–21, 56:9–15 & 57:1–6). Finally, notwithstanding application of the aggravating factor, the Government contends that the Section 3553(a) factors should bar Mr. Cifuentes's requested relief. (*Id.* at 7–8).

Although Mr. Cifuentes has zero criminal history points, the Court finds that "Part B of Amendment 821 does not apply because at least one aggravating factor is present." *See United States v. Pagartanis*, No. 18-0374, 2024 WL 2111544, at *2 (E.D.N.Y. May 10, 2024). Relevant here, and as discussed at length during sentencing, there is ample evidence of substantial financial hardship that the victim investors suffered as a result of Mr. Cifuentes's offense conduct. For example, R.V. submitted a letter stating that he "could not afford a single slice of pizza for [his] children," which the Court noted "seem[ed] to be a substantial financial hardship in this case," notwithstanding application of a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) for ten or more victims. (Sent. Tr. at 50:12–15; *see also id.* at 189:3–8). During sentencing, the Court heard from N.M., who stated that because of Defendants' fraud, she and her husband "had zero in [their] accounts and two toddlers to feed." (*Id.* at 114:18). Finally, the PSR includes a portion of victim S.R.'s statement, which explicitly noted that "[s]ince [they] made [their] investments with

---

ranges established for the defendant's crimes; (iv) pertinent policy statements issued by the United States Sentencing Commission; (v) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (vi) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (2)(B)–(D) & (4)–(7).

[5]     U.S.S.G. § 2B1.1(b)(2)(A) provides for a two-level increase "[i]f the offense—(A) (i) involved 10 or more victims; (ii) was committed through mass-marketing; *or* (iii) resulted in substantial financial hardship to one or more victims." (emphasis added).

4

the Cifuentes Fund [they] have not been able to recover financially." (PSR ¶ 65). For these reasons, Mr. Cifuentes is ineligible for a sentence reduction. *See, e.g.*, *United States v. Cheng*, No. 21-0261, 2025 WL 573767, at *3 (S.D.N.Y. Feb. 21, 2025) ("As Judge Nathan put it at sentencing, Cheng's conduct destroyed lives, businesses, dreams, and families. Because these harms amounted to substantial financial hardship, Cheng fails the criteria of paragraph (a)(6) and may not receive a reduction under Amendment 821." (cleaned up)).

Furthermore, the Court rejects Mr. Cifuentes's argument that the law of the case doctrine bars consideration of the victims' substantial financial hardship under Amendment 821. (Mov. Br. at 5; *see also* Reply Br. at 2–3 (arguing that because the Government failed to seek the substantial financial hardship enhancement, Mr. Cifuentes cannot "challenge the evidence adduced at the sentencing hearing or put forth evidence regarding the relativity of the victim's losses to the victim's means")). First, the Government is correct with respect to the Court's application of the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) for ten or more victims. (Opp. Br. at 6). Indeed, the Court did not need to assess whether the two-level increase applied as a result of substantial financial hardship under U.S.S.G. § 2B1.1(b)(2)(A)(iii) because there were at least thirty known investor victims in this case and the enhancement demands an either/or application—either ten or more victims, or substantial financial hardship to one or more victims. (*See* PSR ¶ 60; *see also* Sent. Tr. at 56:7–57:7 & 151:5–6).

Second, other courts have rejected the same or similar arguments in matters involving substantial financial hardship, despite the fact that they did not apply a substantial financial hardship enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(iii). *See, e.g.*, *United States v. Hanson*, No. 19-0089, 2024 WL 2781065, at *4 (D.N.D. May 30, 2024) ("The [c]ourt rejects the contention that there can be no finding of substantial financial hardship absent an enhancement under U.S.S.G. § 2B1.1(2)(A)(iii)."). Critical here, Application Note 1 to U.S.S.G. § 4C1.1 provides "[t]he application of subsection (a)(6) is to be determined *independently* of the application of subsection (b)(2) of § 2B1.1." *Id.* (emphasis added). Thus, U.S.S.G. § 4C1.1(a)(6) "does not itself limit its application to cases where the enhancement under Section 2B1.1(2)(iii) applied as it does in subsection (2), (8), (9), and (10)." *Id.* (finding defendant ineligible for a sentence reduction under U.S.S.G. § 4C1.1(a)(6) where "[t]he loss was heart-breaking, substantial, and clear"); *see also United States v. Stites*, No. 22-20020, 2024 WL 3535120, at *2 & *4 (D. Kan. July 24, 2024) ("The court rejects Ms. Stites's argument that the court can't find substantial financial hardship absent an enhancement under § 2B1.1(b)(2)(A)(iii).").[6]

Lastly, even if Mr. Cifuentes was eligible for a reduction under Amendment 821 and notwithstanding his rehabilitative efforts while incarcerated, this Court finds that his sentence of seventy-one months' imprisonment remains sufficient, but not greater than necessary, to accomplish the goals of sentencing. (*See* Sent. Tr. at 148:2–161:3 (discussing the factors under 18 U.S.C. § 3553(a))). Indeed, "this case [continues to be] one that [this Court] will never forget." (*Id.* at 149:1–3 & 160:5–6). As to the severity of the offense, although the Court acknowledged

---

[6] *Cf. United States v. Moseley*, No. 16-0079, 2024 WL 3898237, at *3 (S.D.N.Y. Aug. 22, 2024) (finding that even if application of the § 2B1.1(b)(2) enhancement at sentencing did not render a defendant ineligible for a sentence reduction under Amendment 821 "the [c]ourt would have no trouble independently concluding that Moseley personally caused substantial financial hardship to his victims").

that Mr. Cifuentes "had a hard life" and a traumatic childhood, those circumstances did not "entitle him to take the life savings of hard-working individuals that saved and scrimped" over the course of three long years. (*Id.* at 150:16–18, 155:10–12 & 160:8–11). Mr. Cifuentes "defied trust, defied friendship, defied common decency, and took money to buy luxury items. To live a false life. To live a false persona." (*Id.* at 150:21–23). As the Court noted during sentencing Mr. Cifuentes's conduct resulted in devastation that went beyond money for one apparent reason: greed. (*Id.* at 151:12–15). There remains no explanation for what occurred in this case apart from greed. (*Id.* at 151:18–152:4). The investor victims suffered life-altering devastation; their victim impact statements reflect the seriousness of the instant offense and the need for the severe penalty imposed. (*Id.* at 152:5–11). In terms of promoting respect for the law, the Court observed that Mr. Cifuentes had no criminal history or motor vehicle infractions and noted that his record played a role in the Court's refusal to vary upward. (*Id.* at 153:9–15). The need to evade unwarranted sentencing disparities, general deterrence, and the need to protect the public from further crimes of Mr. Cifuentes also factored into the imposed sentence—particularly the concern that "desperation may cause [him] to attempt to prey on unsuspecting people in the future." (*Id.* at 154:17–19 & 158:5–9). Overall, the Court still "can[not] understand what was going through Mr. Cifuentes's mind. How [he] possibly thought it was okay to steal people's life savings and lie to their faces." (*Id.* at 159:13–16).

For all of these reasons, the Court's concerns under the Section 3553(a) factors have not changed since sentencing and its analysis under Section 3553(a) weighs heavily against granting Defendant's Motion.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Cifuentes's Motion (D.E. No. 158), is **DENIED**. The Clerk of Court shall mail a copy of this Letter Memorandum to Mr. Cifuentes by regular U.S. mail.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**